# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TEXARKANA DIVISION

| | |
|---|---|
| ANDRA GROUP, LP,<br><br>　　　　Plaintiff,<br><br>v.<br><br>KENDRA SCOTT, LLC,<br><br>　　　　Defendant. | CASE NO. 5:24-CV-00131-RWS<br>*LEAD CASE* |
| ANDRA GROUP, LP,<br><br>　　　　Plaintiff,<br><br>v.<br><br>AMERICAN EAGLE OUTFITTERS, INC.,<br><br>　　　　Defendant. | CASE NO. 5:24-CV-00152-RWS<br>*MEMBER CASE* |
| ANDRA GROUP, LP,<br><br>　　　　Plaintiff,<br><br>v.<br><br>GAMESTOP, INC.,<br><br>　　　　Defendant. | CASE NO. 5:24-CV-00166-RWS<br>*MEMBER CASE* |
| ANDRA GROUP, LP,<br><br>　　　　Plaintiff,<br><br>v.<br><br>FOSSIL GROUP, INC.,<br><br>　　　　Defendant. | CASE NO. 5:24-CV-00168-RWS<br>*MEMBER CASE* |

**ORDER**

Before the Court are: (1) Defendants Kendra Scott, LLC, Mejuri, Inc., Dillard's, Inc., Signet Jewelers Ltd. and Zale Corporation's Motion to Dismiss the Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) (Docket No. 15);[1] (2) Defendant American Eagle Outfitter Inc.'s Rule 12(b)(6) Motion to Dismiss (No. 5:24-CV-00152, Docket No. 10); (3) Defendant GameStop, Inc.'s Rule 12(b)(6) Motion to Dismiss (No. 5:24-CV-00166, Docket No. 11); and (4) Defendant Fossil Group, Inc.'s Rule 12(b)(6) Motion to Dismiss (No. 5:24-CV-00168, Docket No. 11). The motions are fully briefed, and the Court heard argument on the motions on May 15, 2025. Docket Nos. 15, 26, 30, 35, 45; No. 5:24-CV-00152, Docket Nos. 10, 18, 22, 24; No. 5:24-CV-00166, Docket Nos. 11, 15, 19, 20; No. 5:24-CV-00168, Docket Nos. 11, 15, 19, 20. Each motion argues that Plaintiff's patent infringement claims should be dismissed on the grounds of patent invalidity under 35 U.S.C. § 101.

## I.  Background

Plaintiff filed suits for patent infringement against Kendra Scott, LLC; Mejuri, Inc.; Dillard's, Inc.; Signet Jewelers Ltd.; Zale Corporation; American Eagle Outfitters, Inc.; GameStop, Inc.; and Fossil Group, Inc. (collectively, Defendants). Docket No. 1; No. 5:24-CV-00141, Docket No. 1; No. 5:24-CV-00149, Docket No. 1; No. 5:24-CV-00152, Docket No. 1; No. 5:24-CV-00166, Docket No. 1; No. 5:24-CV-00168, Docket No. 1; No. 5:24-CV-00171, Docket No. 1. Plaintiff alleges that each Defendant infringes U.S. Patent No. 8,078,498 (the '498 Patent), titled "Virtual Showroom System and Method." *See, e.g.*, Docket No. 1. The '498 Patent generally claims "method[s] of displaying an article within a virtual showroom associated with a network server." Docket No. 1-2 ('498 Patent) at 11:27–28. The alleged invention involves a

---

[1] All citations refer to the docket entries in lead case no. 5:24-CV-00131-RWS, unless otherwise specified.

graphical user interface (GUI) that includes multiple thumbnails showing different images of an article from different perspectives. *See, e.g.*, *id.* at 11:27–43. A user can select a particular thumbnail to enlarge the image contained in that thumbnail in a "master display field." *Id.* Figure 3 displays an illustrative embodiment of the method claimed by the '498 Patent. *Id.* at 2:38–39.



*Id.* at FIG. 3.

Plaintiff charges that Defendants' ecommerce websites display articles for sale in a manner that infringes the claimed methods of the '498 Patent. *See, e.g.*, Docket No. 1 at ¶¶ 24–38.

## II. **Legal Standard**

Under Federal Rule of Civil Procedure 12(b)(6), the Court must dismiss a complaint that does not state a claim for relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To state a plausible claim,

Plaintiff must plead facts sufficient to allow the Court to draw a "reasonable inference" that Defendants are liable for the alleged patent infringement. *See id.* (citing *Twombly*, 550 U.S. at 556). At this stage, the Court accepts all well-pleaded facts as true and views them in the light most favorable to the Plaintiff. *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 461 (5th Cir. 2010).

The Supreme Court has established a two-part test for patent eligibility. *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 217–18 (2014). First, the Court must "determine whether the claims at issue are directed to a patent-ineligible concept." *Id.* at 218. Claims directed to software inventions do not automatically satisfy this first step of the inquiry. *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. 2016). Rather, "the first step in the *Alice* inquiry . . . asks whether the focus of the claims is on [a] specific asserted improvement in computer capabilities . . . or, instead, on . . . an 'abstract idea' for which computers are invoked merely as a tool." *Id.* at 1335–36.

Second, if the claims are directed to an abstract idea, the Court then determines whether the claimed invention includes an inventive concept sufficient to transform the abstract idea into a patent-eligible application. *Alice*, 573 U.S. at 221. An inventive concept is one that is "sufficient to ensure that the claim in practice amounts to 'significantly more' than a patent on an ineligible concept." *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1255 (Fed. Cir. 2014) (quoting *Alice*, 573 U.S. at 217–18). The Court "consider[s] the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Alice*, 573 U.S. at 217 (quoting *Mayo Collaborative Servs. v. Prometheus Lab'ys, Inc.*, 566 U.S. 66, 78–79 (2012)). Put another way, "the second step of the *Alice/Mayo* test is satisfied when the claim limitations 'involve more than [the] performance of "well-understood, routine, [and] conventional activities previously known to

the industry." ' " *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1128 (Fed. Cir. 2018) (quoting *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1347–48 (Fed. Cir. 2014)). Even if each individual claim element was known in the art, "an inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces." *BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016).

The Court may defer a patentability determination under Section 101 where the ineligible subject-matter inquiry hinges on unresolved claim construction issues. *See, e.g.*, Order at 5–6, *Cathx Rsch. Ltd. v. 2G Robotics, Inc.*, No. 5:21-CV-00077-RWS (E.D. Tex. May 17, 2022), ECF No. 52; *Luminati Networks Ltd. v. Teso LT, UAB*, No. 2:19-CV-00395-JRG, 2020 WL 6803256, at *3 (E.D. Tex. July 15, 2020). To defeat a motion to dismiss on such grounds, a patentee bears the burden of "propos[ing] a specific claim construction . . . and explain[ing] why [any dispute about that term] . . . must be resolved before the scope of the claims can be understood for § 101 purposes." *Mobile Acuity Ltd. v. Blippar Ltd.*, 110 F.4th 1280, 1293–94 (Fed. Cir. 2024) (quoting *Trinity Info Media, LLC v. Covalent, Inc.*, 72 F.4th 1355, 1361 (Fed. Cir. 2023)). Rather than deferring a determination of eligibility, a court may also "proceed by adopting the non-moving party's constructions, or" by "resolv[ing] the disputes to whatever extent is needed to conduct the § 101 analysis, which may well be less than a full, formal claim construction." *Aatrix*, 882 F.3d at 1125 (internal citations omitted).

### III. <u>Discussion</u>

Each of Defendants' motions argues that all claims against each Defendant should be dismissed because the asserted claims of the '498 Patent are subject-matter ineligible under 35 U.S.C. § 101 and thus invalid. *See, e.g.*, Docket No. 15 at 1. Defendants also argue that the Court may not consider Plaintiff's expert report in resolving Defendants' motions. *See, e.g.*, *id.* at 29–

30. In response, Plaintiff argues that the asserted claims of the '498 Patent are patentable under Section 101. *See* Docket No. 26 at 16, 26. Moreover, Plaintiff contends that Defendants' motions suffer from two procedural defects that bar the Court from granting the relief that Defendants seek. *See id.* at 10, 14. First, contrary to Defendants' arguments, Claim 1 is not representative of the asserted claims of the '498 Patent, and, second, subject-matter eligibility cannot be assessed before the claims of the '498 Patent have been construed. *See id.* Because it would be beneficial to construe the claims of the '498 Patent before evaluating Defendants' invalidity challenges, the Court need not reach the parties' other arguments.

According to Plaintiff, construction of the claim terms "thumbnail images" and "master display field" is necessary to resolve the issue of material fact of whether the claims of the '498 Patent are "well-understood, routine, and conventional" under *Alice* step two. *Id.* at 15–16. Plaintiff proposes a construction for the term "master display field," which Defendants do not dispute.[2] *See, e.g., id.* at 16 n.2; Docket No. 30 at 3 n.2. In response, Defendants only argue that claim construction is unnecessary because the claims would be invalid under all plausible constructions. *See, e.g.,* Docket No. 30 at 3.

Here, Plaintiff has shown that the claim construction of at least the "master display field" term will likely impact the determination of whether the claims of the '498 Patent are invalid at *Alice* step two and thus Defendants' motions are **DENIED** without prejudice to refiling. *See* Docket No. 26 at 16 & n.2. To survive a motion to dismiss at *Alice* step two, a plaintiff must set forth "plausible and specific factual allegations that aspects of the claims are inventive" that are

---

[2] For the "master display field" term, Plaintiff proposes the construction "a display field in the same visual context as the thumbnails, not a pop-up window, that does not require reloading the page or navigating back and forth, and was not conventional at the time of the invention." Docket No. 26 at 16 n.2.

not "wholly divorced from the claims or the specification." *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1317 (Fed. Cir. 2019). Construction of the "master display field" term has an impact on "whether certain benefits recited in the pleadings or specification are actually present in the claims" or "wholly divorced" therefrom. *GREE Inc. v. Supercell OY*, No. 2:19-CV-000172-JRG-RSP, 2020 WL 897250, at *3 (E.D. Tex. Jan. 5, 2020), *report and recommendation adopted*, No. 2:19-CV-172-JRG-RSP, 2020 WL 887734 (E.D. Tex. Feb. 24, 2020). Notably, Plaintiff contends in its complaint that the combination of elements forming the GUI method claimed was unconventional and resulted in an improvement in the functioning of computers. Docket No. 26 at 26. These contentions are supported by allegations that the claimed GUI configuration was not utilized at the date of invention of the '498 Patent. *Id.* at 27–28 (citing Docket No. 1 at ¶¶ 13–17, 19–20; Docket No. 1-3 (Garlick Report) at 8–26).[3] Further, in the context of dial-up internet in the year 2000—the alleged priority date of the '498 Patent—Plaintiff's complaint alleges that the claimed GUI configuration resulted in a 42% reduction in load time and reduced bandwidth usage compared to prior art systems. *Id.* at 28 (citing Docket No. 1 at ¶ 22; Docket No. 1-3 (Garlick Report) at 9–18). According to Plaintiff, these benefits were the result of the "master display field" concept and how the images loaded in that field differ from those loaded in the "thumbnail[s]." *Id.* at 15; *see also* Docket No. 1 at ¶ 22. Whether Plaintiff's allegations are sufficiently tethered to the

---

[3] To the extent that deciding these motions requires the Court to consider Plaintiff's expert report, such consideration is appropriate. As acknowledged in *Padilla* and affirmed by *Financial Acquisition Partners*, "courts in the Fifth Circuit can consider documents attached to complaints, including affidavits, to the extent those documents set forth facts rather than opinions or legal conclusions." *United States v. Padilla*, No. EP-21-CV-00229-DCG, 2022 WL 10757217, at *2 (W.D. Tex. Oct. 18, 2022); *see also Fin. Acquisition Partners LP v. Blackwell*, 440 F.3d 278, 285–86 (5th Cir. 2006) (affirming a district court's application of the same principles). The Court considers Dr. Garlick's report to the extent that it is used to support factual allegations regarding the state of the art at the time of invention, but disregards opinions and conclusory assertions about whether elements of the claimed invention were not routine or conventional. Defendants' arguments that the Court must wholly disregard Plaintiff's expert report are unpersuasive.

claims and the specification depends in part on how at least the "master display field" term is construed.[4] *See GREE*, 2020 WL 897250, at *3.

Deferring ruling on Defendants' Section 101 challenges is the most prudent path forward. The parties fail to adequately address the proper construction for the "master display field" term in the briefing. Plaintiff does not explain why its construction is correct, and Defendants do not dispute the construction. Moreover, for purposes of the *Markman* proceedings, both parties have proposed different constructions for the "master display field," which are not the same as the construction proposed in Plaintiff's motion to dismiss briefing. Docket No. 59 at 2. The Court declines to decide how to construe the "master display field" term without adequate briefing and will not adopt a hypothetical construction that both parties no longer endorse.

## IV. Conclusion

Because claim construction would be beneficial before deciding the validity of the '498 Patent, Defendants' motions to dismiss (Docket No. 15; No. 5:24-CV-00152, Docket No. 10; No. 5:24-CV-00166, Docket No. 11; No. 5:24-CV-00168, Docket No. 11) are **DENIED** without prejudice to refiling. Defendants may reassert their Section 101 challenges after the Court issues its claim construction order if they wish to do so.

---

[4] In making this determination, the Court does not credit the portion of Plaintiff's proposed construction from the motion to dismiss briefing that posits that the "master display term" "was not conventional at the time of the invention." Docket No. 26 at 16 n.2. In adding that phrase to its construction, Plaintiff suggests that the Court must necessarily construe whether that claim term was conventional before it must decide the closely related issue of subject-matter eligibility. A plaintiff cannot circularly argue that subject-matter eligibility is not ripe for resolution before claim construction merely by proposing that the proper construction of a term is that it is subject-matter eligible. It is the other elements of Plaintiff's proposed construction that impact the Section 101 inquiry.

**So ORDERED and SIGNED this 2nd day of July, 2025.**

ROBERT W. SCHROEDER III
UNITED STATES DISTRICT JUDGE